Stephen Wax for Mr. Caughey. Your Honors, this is another ex post facto parole board case. It involves, however, an entirely distinct set of rules from that which you just heard about in Brown and which you will hear in the next portion in Mr. Evers' case. Mr. Wax, I'm confusing the three cases. Is this the one where you actually have a diagnosis that he's a danger or is that Evers? That's the next case. That's the next one? Right, and we don't believe there is such a diagnosis in Evers, but this case does not involve a diagnosis issue. Okay. Let me just very briefly set out the facts, if I may. Mr. Evers' case involves a situation in which the Board of Parole acted in 1987. I'm sorry, can I interrupt for just a minute? The clock doesn't seem to be running. That's good. Now it's running. Thank you, Your Honor. Yeah, that's what they always say when there's something bad. Thank you, Your Honor. In 1987, the Oregon Board of Parole acted with respect to Mr. Caughey and made a determination based on the rules that existed at that time, 022, sub 7 or 8, 079, and 096. In 1996, the Board of Parole looked at his case again and applied new rules that were not in existence in the 1980s and came to a different conclusion that resulted in an approximately seven-year increase in his term of incarceration. The brief has been argued based on the 022 roof rule with which this court has some familiarity from past cases, a rule that involves the question of erasure of original sentences when the parole board acts when a person has been paroled and commits new crimes. In the briefing, in discussing roof, we also discuss in separate sections the 079 and 096 issue. In the argument today, I'm going to focus on the 079 and 096 issue and what I believe to be a fundamental mistake in fact that has infected this case throughout and which this court should address and can address without deference under 2254 D2 because the case in the record shows an unreasonable application of fact. Now, that unreasonable application is found in the statement in the Oregon Court of Appeals decision in Mr. Caughey's case that when the board acted in 1987, it did not impose a sanction so that when they acted in 1996, what they were doing was looking back at a record and saying, whoops, the board in 1987 made a mistake. It found a violation but didn't impose a sanction and now we can come back and impose the sanction. When you look at the excerpt of record and see on the board action form, which is at pages 15 and 16 of the record, you'll find that the board with five members at that time and the 096 rule that required four members to take certain actions, could only muster three who wanted to do one thing and two who wanted to do something else. So the BAF at the excerpt, page 16, makes it clear that the board at that time considered the violation, considered imposing a lengthy sanction, did not have the votes to do so. When you turn to page 15 of the excerpt, the form that has lots of codes and stuff at the bottom, arcane parole board material, when you look at the lines that say activity, decision, months set, you get to months set and you find zero. What this portion of the board action form is telling us is that the board of parole in 1987 looked at what the matrix range for a violation could have been. They put 60 to 80 months. They then make a decision that they will not impose any further sanction time beyond the time that he had already served prior to their action, which resulted in the consideration date of 2001. Now, unfortunately for Mr. Coggy, when you look at the decision of the Oregon Board, the Oregon Court of Appeals, what you find is that they make the fundamental, unreasonable statement of fact that in 1987 there was no sanction imposed, therefore, they could come back and do in 1996 what they did. What would be wrong with looking at the record and concluding that since the board had before it the circuit court's judgment running the sentence consecutive, that in essence when he was returned to their custody, there was no need at that point to impose a sanction for the parole violation because he was beginning to serve the consecutive sentence that the court had imposed? The importance, Your Honor, is that if they had set a lengthier sanction, the second sentence would have begun to run consecutively at some point in the future, which is what they attempted to do by application of the new rules in 1996. Okay, but there's no, you concede that the sentence was ordered to run consecutive, correct? That's correct. And that there was only one sentence that was consecutive for purposes of this later rule change? That's correct. Okay, so then the question becomes whether or not your argument was that the board looked at that situation and decided, even though the guy committed this second crime on his first day of parole, that we're not going to impose any kind of additional parole sanction for that violation. Is that what your position is? That is the decision the board took, which is reflected at page 16 of the excerpt of record. Did you make this argument to the district court? I have to admit this one surprises me a bit. Well, the briefing focused more on the issues related to 022 and the roof rule. So is the answer no? No, the answer is yes.  Participating in that question, I had it outlined, and it is at least at three or four different pages of the brief, Your Honor, and I am embarrassed to say that that paper is not here. There is a section in the brief, I believe, if I remember correctly, in the 20s, that specifically addresses the 079, 096 issue at page 26. The board retroactively applied 079 and 096 as a section. I understand the retroactivity argument, but the argument that I hear you making is one that, quite frankly, I missed, Mr. Wax, and that is your argument is that the board didn't overlook a sanction, that it affirmatively decided it would impose none. And so that, therefore, in 1996, when it went back and announced that it was imposing a sentence for the parole violation, it was, in effect, revisiting a question it had already decided when he was returned to the custody of the OSB. At page 306 of the excerpt, Your Honor, I believe... Where in your brief do you make that argument? It is not articulated in precisely that language. That's what I thought. Okay. Thank you, Mr. Wax. I believe, however, that all of the facts and the argument about the rules, the argument about the rules is set out in the brief at multiple places in terms of what happened with 079 and 096. I understand Judge Tolman's problem with the argument not being made in explicit terms in the brief. And my question does not assume that the question is, therefore, properly before us. But let me get to the merits. I have in front of me that page 16 that you characterize as having affirmatively decided not to impose a sanction for parole violation. Can you translate? I mean, can you read me the portion of that that tells me this? I try to read this, and there's a little bit of sort of inside baseball talk that I'm not sure I translate very well. The three-to-two vote, and then when you turn to page 15, the month's set line, which is maybe two inches up from the bottom of page 15, zero. That is an affirmative entry by the board that no month sanction is being set. That's at the bottom of 15. I understand that's 15, but is there something on page 16 that explains why I should construe the no month sent as a deliberate decision not to set the months instead of an oversight? Instead of simply focusing on the new crime? Yes, because the July 12, 2001 consideration date is derived from the absence of setting of a sanction. My perspective is slightly different. I think more tightly focused on that. I'm trying to understand what the board is doing in its notation on page 16, and I'm trying to figure out, is there something here that tells me that they are affirmatively deciding not to impose a penalty for the parole violation? Because I read this, and it seems to me at least possible that they're simply setting the sentence for the new crime and not deciding one way or the other as to what they're going to do with the parole violation. So help me with this language. Make it read the way you want me to read it. I'm afraid that the only answer I can give gets back to the inside baseball talk. Okay. Remember, that's why I'm asking you the question. Yeah. When Groener, Fats, and Robinson say, Concur with the 180-month judicial minimum and then set the consideration date of July 12, their obligation at this hearing was to look at both, and in setting a consideration date, I think it should be assumed that they understand their obligation and that doing this all the time as they do, entering the dates on the first sheet that they were acting. Okay. And just to make sure, this shows my ignorance, but I'm never embarrassed, or at least not too embarrassed to state it publicly, my ignorance. Here it is. When it says, Concur with the 180-month judicial minimum, what they're doing is setting the sentence for the new crime. Is that right? In that line, correct. But then the next clause, therefore, set parole consideration date. As the board operates, that incorporates the new crime and any sanction. But we have no affirmative evidence beyond the fact that they don't mention it and that on page 15 there's a zero. That's the only affirmative evidence that we have that they've affirmatively decided not to impose a separate penalty for the parole violation. No, Your Honor. Okay. Page 306 of the excerpt is the affidavit that Mr. Caughey submitted in the state court proceedings, which was unrebutted by the state, so I submit should be accepted as true, in that he says that, I distinctly recall, I've been told by the board almost word for word, quote, because you were on parole, your old sentence is in effect canceled. Therefore, your parole consideration date is July 12, 2001. That language is the language of ROOF, which Mr. Caughey asserts in his 022 argument, was applied to him. Now, we recognize that, you know, subsequently the Oregon Court of Appeals has said no, you know, ROOF does not apply in that way, and they said that in Mr. Caughey's case. Notwithstanding the Court of Appeals interpretation, the record here shows that the board pulled Caughey. They were applying ROOF, even though it was only a single sentence as opposed to multiple consecutive sentences. Okay. Now you've run over. Let's do a minute of rebuttal. Thank you. Let's hear from Ms. Alexander. May it please the Court, Carolyn Alexander for Respondent Joan Palmatier. Just briefly on the ROOF issue, clearly the rule in ROOF does not apply to Mr. Caughey. The Court of Appeals found that. He also has alleged no federal question in discussing that claim. He's just complaining that the board applied the wrong section of the rule. The rule wasn't amended. There was no rule that was applied retroactively to him. That claim I don't think is particularly difficult. As to his argument on the 096, the rule that allowed the board to impose the sanction, first of all, he did not raise this argument in the district court. I briefed this case in the district court. I tried this case in the district court. I have never had a chance to respond to that argument. Second of all, the record does not show what Mr. Wack says the record shows. In the 1987 board order that he was referring to at page 16, it's clear what the board is doing, as the Court noted. They're setting the prison term for the new sentence, and they're making a decision as to whether Mr. Caughey will be paroled on that new 1986 sentence. And they decide that he is. They don't have the affirmative vote of four members to deny parole. So they set a parole release date. That's all that happens in the 1987 order. Then in the 1996 order, which is that excerpt of Record 24, they discovered they never imposed the sanction on the 1973 sentences and the subsequent parole violation. Now, the Court of Appeals specifically addresses that issue and finds, at excerpt from Record 327, In 1996, the board reviewed Appellant's file and discovered that it never established the sanction for the August 1986 parole violation. It therefore conducted an administrative review and held a hearing, which is a future disposition hearing, which sets a parole release date, to establish the sanction and to determine the date on which Appellant began serving his sentence on the 1986 kidnapping. That's a factual finding. And under Section 2254E1, it's entitled to the presumption of correctness, unless the petitioner rebuts that with clear and convincing evidence. An argument that that's not what the record shows or that's not what the 1986 board order did is not clear and convincing evidence. It's an argument for a different interpretation than what the Court of Appeals found otherwise. Another two points I would make, just briefly. In his reply brief, he cites the fairly recent opinion of this court, Himes v. Thompson. The citation to Himes is a bit confusing. I believe he's citing it to show an ex post facto violation under this rule. Himes was a completely different issue. Himes involved the methodology for determining aggravation and aggravating factors under the same rule, but it's a different process under that rule that the board goes through. The board did find aggravating factors in Mr. Cahie's case. He has never challenged those factors. I believe he might have raised the issue in state court, but in this proceeding he's never challenged the aggravating factors, so Himes simply doesn't apply. He also cites the Bollinger case, which is a state law case for the proposition, again I assume, that here's evidence of an ex post facto violation. Bollinger, the Court of Appeals did find an ex post facto violation, but again it was on a different issue. It was for inmates who affirmatively elected to waive parole and serve to their good time date, so that they could be released without a period of parole supervision. Again, Mr. Cahie has never elected to waive parole and serve to his good time date, and that's not an issue in this case at all. One final thing I would bring to the Court's attention, supplemental authority, Butler v. Board of Parole, that I brought with me this morning. I apologize, that case came out very late on Thursday. So knowing that the Court wouldn't get that, I brought copies with me. I assume Mr. Wax has seen the case as well? Yes. And if you could just give it to the Court of Deputy, that would be terrific. I did. What Butler said is that a change in the number of board members, from five to three, when a majority still is required to deny re-release, is only a procedural change and doesn't change the substantive standard for parole release. Therefore, the Court of Appeals held there's no ex post facto violation under either the Oregon Constitution or the United States Constitution ex post facto clause. Now this is not a claim in this proceeding. However, petitioners raised the issue, I think, in the larger context of the Board's expansion of its authority to impose the sanction. I don't believe I have anything further, Your Honors, unless there's questions from the Court. I think not. Thank you very much. Thank you. Mr. Wax, would you like a minute? I would just point the Court to pages 9 and 25 of our brief in which we discuss the issues that we're discussing. The facts of what happened in the 1986 proceeding, those were two of the pages that I had marked, and Judge Talman and I think are as responsive as I can get to your answer. I have nothing else to add unless the Court has any more questions. I'm on page 9. Where on page 9 am I supposed to look? The paragraph that describes when the Court imposed a consecutive sentence for new criminal activity, the range for the 73 sentence was to be converted to the time served prior to revocation. So he's putting in the fact that that is what occurred at that time. And then at page 25 of the brief, the paragraph under the State's own interpretation of the applicable rule, he began serving the guideline sentence. What was ex post facto about that? What was ex post facto, Your Honor, was that in 1996, the Board applied the new version of the 096 OAR, which permitted action with, at that time, because of the change in the number of people, fewer than four people. Now, of course, there are fewer members of the parole board. Applying that rule in conjunction with their rereading of the 022 rule on wiping out of sentences constitutes the ex post facto violation. They had a set of rules in place, 096 in 1986, 022 in 1986. They applied them properly. Well, under both the old rule and the new rule, a majority of the Board could make a decision, could it not? In 96, it was a super majority. It required four out of the five votes in order to take the action that the Board. And after the Board was reduced in size at what? Two out of three. You'd have two out of three. Correct. But isn't that just a procedural change? In terms of answering that, Your Honor, I would refer the Court to the discussion of procedure in the NULF decision, which is cited in the briefs, which says that you need to look at the totality of the impact of the rules and whether or not there is any evidence that can be presented that a change might be detrimental. Here, this record has that evidence because in 87, they took one action, and in 96, they took a far less favorable action. In 87, maybe they took no action. They revoked his parole and let him serve out his sentence, which would have been another 13 years or something, wasn't it? Fifteen, approximately. And the statute required that at that time, and still does, doesn't it? The statute says that if on revocation, the prisoner will serve his original sentence. That is one. There is authority for the court to do that. Well, there may have been practices where the parole board fiddled around within those numbers, but the statute said he could serve his full sentence. Well, Your Honor. That's the purpose of revoking parole is to teach him a lesson. Don't go out and do it again. I think that that question gets back to the issue in Brown and Everest. Well, that does sort of. With respect to the difference between the statutory authority, the rulemaking authority, and policy. In our system, the statute prevails, doesn't it? If the parole board has. . . If you've got a bunch of bureaucrats that are playing games within the statute, that may cause some problems. But if it comes to court, the statute prevails. Well, Your Honor, I would disagree with that statement in this context. If the statute gives the parole board authority to write rules that can be less harsh than is permitted under the statute, and the legislature has said to the board, here's the ceiling. You can act anywhere up to that ceiling. That's the situation that we have here. And when the board writes a rule that's below the statutory ceiling, that becomes what we have to look at for ex post facto purposes. And that's what we submit happened here with these rules, 02279 and 96, as well as in the Brown and Everest case. But perhaps I should put this brief aside and get back to Everest. Thank you very much. The case of Coggy v. Palmatier is now submitted. The next case on the calendar is Everest v. Czerniak. When you're ready, counsel. Take as much time as you need. I'm ready if the court agrees.
judges: Goodwin, W. Fletcher, Tallman